**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:26-CR-14** |
| | ) | **JUDGES CRYTZER/McCOOK** |
| **TYLER SHANE WELLS** | ) | |

**REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO DISMISS FOR**
**UNLAWFUL ENTRY**

Comes Defendant Tyler Wells, through undersigned counsel, and respectfully submits his Reply to the Government's Response [doc. 61] to the Joint Motion to Dismiss for Unlawful Entry. [Doc. 47]

**I.      ICE did not have the Legal authority to Enter the Premises.**

The construction site at Sagittarius Lane is not an open field. While it is true that an open field is an "unoccupied or undeveloped area outside of the curtilage," that is not the case here. *Oliver v. United States*, 466 U.S. 170, 182 n. 12 (1984). Further, the Sixth Circuit has found that "[t]here may be circumstances in which an area adjoining a business structure is sufficiently private to enjoy a protection analogous to a home's curtilage." *United States v. Elkins*, 300 F.3d 638, 654 (6th Cir. 2002). However, even without the curtilage argument, the construction site is not an open field under existing case law, and the defendants had a reasonable expectation of privacy from the forced entry by law enforcement officers on January 13, 2026.

The Government points to the fact that in *United States v. Rapanos*, the Sixth Circuit noted that the presence of fences, locked gates, and no trespassing signs on an otherwise open field does not create a fourth amendment protection. *United States v. Rapanos*, 115 F.3d 367, 373 (6th Cir. 1997). However, the court emphasized that the property in *United States v. Rapanos* was a true

open field. *United States v. Rapanos*, 115 F.3d 367, 373-74 (6th Cir. 1997) ("The property consists of 175 acres, contains no buildings, and is bordered by an interstate highway and a major state highway."). *Rapanos* only stands for the contention that an almost 200 acre land property with no structures or other private areas cannot be protected under the Fourth Amendment just because it has a fence, gate, or no trespassing sign. That is not the case here. The property not only had the gate, fence, and no trespassing signs, but it also had several buildings, an office, and other structures.

The Government compares the application of the open field doctrine of this jobsite to that of an "open-air" meth lab. *See* Doc. 61, PageID#318. However, there is a key distinction here. An open air meth lab would display visible evidence of illegal activity. The Government does not point to any activity on the jobsite that was visibly illegal at the time law enforcement entered and eventually detained the individuals present. The open fields doctrine has consistently applied to what law enforcement officers see, not a physical search.

Under the Government's logic, law enforcement has no limitations in a jobsite. They may enter, without notice, nor warrant, any jobsite that they want and detain individuals at random so long as those individuals are on a construction site. The Government states that they had been investigating the jobsite since December 20, 2025. Doc. 61, PageID# 319. However, they took no steps to get a judicial nor administrative warrant. ICE did not serve a Notice of Inspection under 8 C.F.R. § 274a.2(b)(2)(ii). There are several options that were available to law enforcement to continue their investigation. They chose instead to enter the premises, claiming to have warrants that they did not have, and unlawfully entered the premises.

The Government asserts that ICE's statutory authority under 8 U.S.C. § 1357(a) and 8 U.S.C. 1226(a) gave them the right to enter the property. This is not so. First, interrogation under

the statute is distinct from arrest; second, ICE has still yet to articulate the basis for the "belief" under 1357(a) that the individuals on the jobsite were aliens; third, there was no administrative warrant under 8 U.S.C. § 1226(a); and fourth, neither of these statutes negate the Fourth Amendment protection against unlawful search and seizure.

## II. Mr. Wells and Mr. Bonilla-Servin both have Standing to Challenge the Unlawful Entry.

The inquiry into standing concerning a business rarely stops at direct ownership. See *O'Connor v. Ortega*, 480 U.S. 709, 716 (1987) ("Within the workplace context, this Court has recognized that employees may have a reasonable expectation of privacy against intrusions by police.") The issue of standing turns on "whether the area was one in which there was a reasonable expectation of freedom from governmental intrusion." *Mancusi v. DeForte*, 392 U.S. 364, 368 (1968) (citing *Katz v. United States*, 389 U.S. 347, 352 (1967) (finding standing in an office setting because a defendant would be entitled to expect that individuals other than invitees would not have access to his records). More broadly, the courts seem to look at the "societal" values and expectations. *Id*; *see also Oliver v. United States*, 466 U.S. 170, 183 (1984).

Mr. Wells assisted in maintaining and managing the jobsite at Sagittarius Lane. The Government refers to the construction site as "Wells's construction site." Doc. 61, PageID#319. As most construction site managers are, Mr. Wells was charged with maintaining the safety of the site and ensuring that it was not accessible to the public because of the dangers associated with the machinery and equipment inside the confines of the jobsite.

**III.** **Dismissal of the Indictment is the Appropriate Remedy because the Constitutional Violation Requires it.**

Because of the constitutional violation in this case, the most appropriate available remedy is dismissal because due process demands dismissal in cases where prosecution is initiated by methods that offend due process to a point that is shocking to the conscience of the court. *Rochin v. California*, 342 U.S. 165, 174 (1952). The law enforcement officers had every opportunity to pursue legal remedies of conducting surveillance, investigation, and arrests related to the Sagittarius Lane jobsite. The government claims to have investigated the site starting at least on December 20, 2025. They intentionally did not pursue these options and instead entered private property with the intent of detaining individuals, even after being informed by the individuals present that the site was private property. Law enforcement told the individuals present that they had a warrant, when they did not.

The Government alleges that this is not fruit of the poisonous tree because attenuating circumstances break the causal connection between the initial encounter and the discovery of evidence. Doc. 61, PageID#325. However, the entry onto the property is the direct cause of the detention of the individuals who were arrested on January 13, 2026, and therefore any evidence, including notes related to their statements, should be suppressed.

Respectfully submitted this 20th day of March 2026.

/s/ Georgia A. Miller
WADE V. DAVIES [BPR #016052]
GEORGIA A. MILLER [BPR #041197]
The Davies Law Firm, PLLC
900 S. Gay Street, Suite 802
Knoxville, TN 37902
(865) 686-6333
wdavies@wadedavies.law
*Counsel for Tyler Wells*