IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE AT KNOXVILLE

| | |
|---|---|
| **UNITED STATES** | |
| **v.** | **No. 3:26-CR-14**<br>**JUDGES Crytzer/McCook** |
| **TYLER WELLS and**<br>**ALEXANDER BONILLA-SERVIN** | |

# DEFENDANTS' SUPPLEMENTAL RESPONSE IN OPPOSITION TO THE UNITED STATES' MOTION TO STAY

## INTRODUCTION

The Court scheduled a hearing on Defendants' motion to dismiss or suppress evidence based on DHS agents' alleged unlawful entry for September 30, 2026. Defendants subpoenaed the DHS agents whose conduct is at issue, and defense counsel complied with the applicable *Touhy* procedures.

The Government moved to quash the subpoenas. [Doc. 170]. The Magistrate Judge denied that motion. [Doc. 189]. On the morning of the scheduled hearing, the Government requested a stay so that it could seek review of the Magistrate Judge's ruling on the motion to quash by the District Judge. [Docs. 190, 191]. The Court denied that request but permitted the Government to renew it with a properly supported concise statement of facts and law. [Doc. 192].

When the matter was called, all subpoenaed witnesses were present and prepared to testify. All defense counsel were likewise present and prepared to proceed. The Court subsequently took the renewed stay request under advisement and requested further briefing concerning the *Nken* factors to include the government's assertion that neither Defendant had a reasonable expectation

of privacy in the site the agents entered to support their ability to bring a motion to suppress under the Fourth Amendment.

The place entered was an operating construction site accessible by a private road – Sagittarius Lane off of Hardin Valley Road. The entrance to the site had a gated fence with a no trespassing sign on it. Mr. Wells was the site manager for Elmington Construction Company which was developing the site. Defendant Bonilla was an employee of a subcontractor at the worksite and located near the site entrance while seated in his privately owned parked vehicle. The anticipated testimony from the DHS agents concerns their entry onto the site and the events that followed and has been carefully limited by the ruling of the Magistrate Judge to 10 finite topics identified in Doc. 170-1.

This response supplements arguments made orally by counsel for both Defendants at the hearing on September 30, 2026.

## LEGAL STANDARD

Here, the only question before the Court is whether the prosecution should be entitled to a stay of the hearing on the Defendant's motion to dismiss indictment based on the unlawful entry of federal officers [Doc.47], while the prosecution appeals Magistrate McCook's Memorandum and Order denying its Motion to Quash Subpoenas [Doc.170].

In determining the prosecution's motion to stay, the Court is to consider and has directed the parties to address four considerations under *Nken v. Holder, 556 U.S. 418,433 (2009)*:1) whether the Government has made a strong showing that it is likely to succeed on the merits of its appeal of Magistrate McCook's Memorandum and Order denying it Motion to Quash:2) whether the Government will suffer irreparable injury without a stay; 3), whether a stay will substantially injure other parties interested in the proceeding – in this case, the Defendants, and 4) where the public interest lies. The government's motion to stay relies primarily upon its assertion that it is

likely to succeed on the merits of the underlying motion to dismiss, which has not yet been heard or decided, because the moving defendants lack standing to raise a Fourth Amendment Claim. The Government cannot rely on factual uncertainty concerning standing while seeking to prevent the hearing needed to resolve that uncertainty. The DHS agents are direct witnesses to their route of entry, the areas they entered, their interactions with Defendants, and any conduct involving Mr. Bonilla's vehicle. These circumstances require distinct, fact-specific inquiries into observation, use, restrictions, and access of the site and the nature of any governmental intrusion involving his vehicle. Thus, the Court should deny the stay and determine standing and the merits of Defendants' motion on a developed evidentiary record. The analysis is not whether the defendants are more likely than not to obtain relief on the motion to dismiss or suppress but whether Magistrate Judge McCook's order denying the Government's Motion to Quash was "contrary to law or clearly erroneous." 28 U.S.C § 636(b)(1)(A);Fed. R. Crim. P. 59(a).

The underlying standing inquiry asks whether the challenged governmental conduct violated each Defendant's own Fourth Amendment rights. A defendant may obtain the benefit of the exclusionary rule only if his own Fourth Amendment rights were violated. *United States v. Salvucci*, 448 U.S. 83, 84 (1980).

A defendant challenging the admission of evidence bears the burden of showing a legitimate expectation of privacy in the area searched or item seized. *United States v. Mathis*, 738 F.3d 719, 729 (2013). That inquiry requires an actual, subjective expectation of privacy and an expectation that society is prepared to recognize as objectively reasonable. *Id*.

In determining whether an asserted expectation of privacy is objectively reasonable, the Sixth Circuit considers whether the defendant was legitimately on the premises, had a proprietary or possessory interest in the place or item, possessed authority to exclude others, and took normal

precautions to preserve privacy. *United States v. Dillard*, 438 F.3d 675, 682 (2006). Ownership is relevant but not dispositive; the inquiry also considers authority to exclude, precautions taken to preserve privacy, the claimant's subjective expectation, and legitimate presence. *United States v. King*, 227 F.3d 732, 744 (2000).

Commercial premises are not categorically excluded from Fourth Amendment protection. *G. M. Leasing Corp. v. United States*, 429 U.S. 338, 353 (1977). A person also need not hold title to a workplace to possess a protected expectation of privacy there; the relevant question is whether, under all the circumstances, the area was one in which the person reasonably expected freedom from governmental intrusion. *Mancusi v. DeForte*, 392 U.S. 364, 367 (1968).

## ARGUMENT

### A. The Government Has Not Made a Strong Showing of Likely Success.

The Government's request for review does not, by itself, demonstrate likely success. The Magistrate Judge denied the motion to quash after defense counsel complied with the applicable *Touhy* procedures. The agents then appeared pursuant to the subpoenas and were prepared to testify. The Government must therefore do more than express disagreement with the Magistrate Judge's ruling or assert a preference that review occur before testimony is received.

The Government's standing argument also fails to establish likely success because it treats two materially different Defendants and asserted privacy interests as though they were interchangeable. Mr. Wells's claim depends on his authority and control over a restricted workplace. Mr. Bonilla-Servin's claim requires consideration of his assigned role at the site entrance and his independent privacy interest in his own vehicle. Neither issue can be resolved merely by labeling the property a "construction site" or the Defendants "employees."

Although legitimate presence alone does not establish a reasonable expectation of privacy, it remains relevant to the inquiry. *Byrd v. United States*, 584 U.S. 395, 404-5 (2018). These Defendants were not alleged to be transient customers or persons present for a brief commercial transaction. One supervised the operating site, while the other was working at his assigned location in his own vehicle. Their standing turns on their respective relationships to the particular place or effect subjected to governmental intrusion.

The agents' testimony is relevant to that inquiry. The agents can testify concerning how they approached the property, where they entered, what access restrictions they encountered, which areas they occupied, how Defendants responded, and whether the challenged conduct extended to the employee's vehicle. The Government has not shown likely success by raising factual questions that the evidentiary hearing was intended to answer.

**B. The Defendants have a Factually Supported Claim of a Reasonable Expectation of Privacy in the Restricted Workplace.**

The Fourth Amendment may protect commercial premises and individual workplaces. *Mancusi v. DeForte*, 392 U.S. 364, 367 (1968), *G. M. Leasing Corp. v. United States*, 429 U.S. 338, 353 (1977). Workplace status therefore does not eliminate Fourth Amendment protection, although the nature of the workplace and its accessibility affect whether an asserted expectation of privacy is reasonable.

Workplace privacy must be assessed case by case because workplaces vary in their accessibility to supervisors, coworkers, visitors, and members of the public. *O'Connor v. Ortega*, 480 U.S. 709, 717 (1987). Actual workplace practices and procedures may reduce an employee's expectation of privacy, but an employee does not lose all Fourth Amendment protection merely because others have some authorized workplace access. *O'Connor v. Ortega*, 480 U.S. 709, 717 (1987).

Here, the existing facts support further factual development rather than a categorical rejection of standing. The construction site was fenced and accessible by a non-public road. It was an operating site under the supervision of Mr. Wells and where Mr. Bonilla was employed. Those facts bear on who exercised control over the entered area, possessed authority to admit or exclude others, and took ordinary precautions to restrict public access—the considerations identified by the Sixth Circuit. *United States v. King*, 227 F.3d 732, 744 (2000), *United States v. Dillard*, 438 F.3d 675, 682 (2006).

An expectation of privacy in commercial premises may be less extensive than an expectation of privacy in a home, but workers may possess Fourth Amendment protection in their own workplaces when their connection to the workplace is sufficiently significant. *Minnesota v. Carter*, 525 U.S. 83, 91 (1998). The site supervisor's continuing operational role materially differs from the brief, purely commercial presence and lack of prior connection found insufficient in the transient-visitor context. *Minnesota v. Carter*, 525 U.S. 83, 91 (1998).

Accordingly, the proper inquiry is not whether commercial property receives the same protection as a home. It is whether these defendants given the operational realities of this restricted workplace, had a subjective expectation of privacy that society would recognize as reasonable.

### C. The Open-Fields Doctrine Does Not Permit the Standing Issue To Be Resolved Without Evidence Concerning the Particular Area Entered.

The Government contends that "[t]he area surrounding a commercial construction site – including an access road – is the functional equivalent of an open field." [Doc. 61, PageID # 315 at PageID # 316]. No reasonable expectation of privacy exists in an open field, and the doctrine can encompass an unoccupied or undeveloped area outside residential curtilage. *Widgren v. Maple Grove Twp.*, 429 F.3d 575, 579 (2005) (citing *Oliver v. United States*, 466 U.S. 170, 180 n.11 (1984)). Fences, gates, and "No Trespassing" signs do not, standing alone, transform an otherwise

open field into a constitutionally protected area. *United States v. Rapanos*, 115 F.3d 367, 372 (1997).

Defendants do not rely on the fence or non-public road as independently dispositive. Those features are relevant because they form part of the factual circumstances surrounding an operating, access-controlled workplace. The Court must still identify the particular area entered, its operational use, the site supervisor's relationship to it, and the nature of the alleged governmental intrusion. Additionally, the court emphasized in *Rapanos* that the property at issue was a true open field. *United States v. Rapanos*, 115 F.3d 367, 373-74 (6th Cir. 1997) ("The property consists of 175 acres, contains no buildings, and is bordered by an interstate highway and a major state highway."). *Rapanos* only stands for the contention that an almost 200-acre land property with no structures or other private areas cannot be protected under the Fourth Amendment just because it has a fence, gate, or no trespassing sign. That is not the case here. The property not only had the gate, fence, and no trespassing signs, but it also had several buildings, an office, and other structures.

The use to which an individual has put a location is relevant to the objective privacy inquiry. *Widgren v. Maple Grove Twp.*, 429 F.3d 575, 579 (2005). The existing facts describe an operating construction site under active supervision, not merely an unoccupied or undeveloped tract. Whether the agents entered only an outdoor area properly characterized as an open field or instead entered or intruded upon a protected workplace area, vehicle, or effect depends on evidence concerning the site's layout, uses, access practices, and the agents' conduct.

The Government cannot establish likely success by applying the open-fields label to the entire site without addressing those distinctions. The anticipated testimony will permit the Court

to determine which areas were entered and whether the challenged conduct implicated a place or effect in which either Defendant possessed a legitimate expectation of privacy.

### D. Mr. Bonilla-Servin Has an Independent Privacy Interest in His Own Parked Vehicle.

Mr. Bonilla-Servin presents a distinct standing question because he was working at the site near the entrance while seated in his own parked vehicle. A person who owns and possesses a vehicle almost always has a reasonable expectation of privacy in it. *Byrd v. United States*, 584 U.S. 395, 404 (2018).

That privacy interest does not depend on the employee's ownership of the construction site or authority over the entire property. If DHS agents searched, opened, reached into, occupied, or examined the interior or contents of the employee's vehicle, or the contents thereof, the employee may rely on his own privacy interest in that vehicle. The hearing is necessary to establish the precise nature of the agents' conduct.

An automobile carries a diminished expectation of privacy compared with a residence, but that diminished expectation does not remove automobiles from Fourth Amendment protection. *United States v. Knotts*, 460 U.S. 276, 281 (1983). Mr. Bonilla's ownership and possession of the vehicle distinguish his claim from one based solely on legitimate presence at another person's property.

Mr. Bonilla's legitimate presence at the construction site alone is not controlling. *Byrd v. United States*, 584 U.S. 395, 404 (2018). But Mr. Bonilla-Servin was not a casual visitor; he was working at his assigned location when the agents entered. While his vehicle interest does not automatically confer standing to challenge every entry onto the broader construction site, any uncertainty about the scope of the intrusion likewise does not establish lack of standing. It demonstrates why the testimony of the agents under subpoena is needed.

**E. The Standing Dispute Supports Proceeding With the Evidentiary Hearing Rather Than Staying It.**

Fourth Amendment standing is personal and depends on whether the governmental conduct violated the claimant's own legitimate expectation of privacy. *United States v. Salvucci*, 448 U.S. 83, 84 (1980). That principle requires an individualized inquiry into each Defendant's relationship to the particular place or effect at issue.

For Mr. Wells, the relevant facts include his actual control over the entered area, his authority to regulate access, the precautions used to restrict entry, the site's operational practices, and the use of the particular area. For Mr. Bonilla-Servin, the relevant facts include his responsibilities at the entrance and the nature of any governmental intrusion involving his own vehicle or effects.

The DHS agents are direct witnesses to the route and manner of entry, the areas entered, the access restrictions encountered, their interactions with Defendants, and any conduct involving Mr. Bonilla-Servin's vehicle. Their testimony would allow the Court to apply the Sixth Circuit's standing considerations to an actual record rather than to competing characterizations of the site.

A categorical ruling would be especially inappropriate because workplace expectations of privacy depend on the operational realities of the particular workplace. *O'Connor v. Ortega*, 480 U.S. 709, 717 (1987). The Government has not established that the operating site necessarily constituted an open field in its entirety, that Mr. Wells lacked authority over every area entered, or that the challenged conduct did not implicate Mr. Bonilla-Servin's vehicle.

Defendants ultimately bear the burden of establishing their respective legitimate expectations of privacy. *United States v. Mathis*, 738 F.3d 719, 729 (2013). Proceeding with the evidentiary hearing allows them to meet—or fail to meet—that burden on evidence. Staying the hearing would postpone development of the very facts required to decide the issue. Further, the

Government has failed to establish the portion of Magistrate Judge McCook's order denying the Motion to Quash that is clearly erroneous or contrary to law, which is the appropriate analysis in this case.

The "clearly erroneous" standard of review applies to a magistrate judge's factual finding. *Bisig v. Time Warner Cable, Inc., 940 F.3d 205 (6th Cir. 2019), Turfco Mfg. v. Turfco Pest Control, LLC, 2009 U.S. Dist. LEXIS 93269*. Under Sixth Circuit precedent, a factual finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Stanford v. Corbin (In re Packaged Ice Antitrust Litig. Indirect Purchaser Action), 2011 U.S. Dist. LEXIS 15782; EEOC v. WW Group, Inc., 2013 U.S. Dist. LEXIS 101599* This standard is highly deferential and does not empower a reviewing district court to reverse the magistrate judge's finding simply because it would have decided the matter differently. *Stanford v. Corbin (In re Packaged Ice Antitrust Litig. Indirect Purchaser Action), 2011 U.S. Dist. LEXIS 15782, EEOC v. WW Group, Inc., 2013 U.S. Dist. LEXIS 101599* . To guide this determination, the Sixth Circuit has established that the test is not whether the finding is the best or only conclusion that can be drawn from the evidence, or whether it is the one the reviewing court itself would draw. *Stanford v. Corbin (In re Packaged Ice Antitrust Litig. Indirect Purchaser Action), 2011 U.S. Dist. LEXIS 15782, Visteon Global Techs., Inc. v. Garmin Int'l, Inc., 903 F. Supp. 2d 521* . Instead, the reviewing court must determine whether there is evidence in the record to support the lower court's finding, and whether the magistrate judge's construction of that evidence is a reasonable one. *Turfco Mfg. v. Turfco Pest Control, LLC, 2009 U.S. Dist. LEXIS 93269, Stanford v. Corbin (In re Packaged Ice Antitrust Litig. Indirect Purchaser Action), 2011 U.S. Dist. LEXIS 15782* .

The "contrary to law" standard of review applies to a magistrate judge's legal conclusions *Turfco Mfg. v. Turfco Pest Control, LLC, 2009 U.S. Dist. LEXIS 93269, EEOC v. WW Group, Inc., 2013 U.S. Dist. LEXIS 101599*. The Sixth Circuit requires district courts to review these legal conclusions de novo, exercising independent judgment *Bisig v. Time Warner Cable, Inc., 940 F.3d 205, Turfco Mfg. v. Turfco Pest Control, LLC, 2009 U.S. Dist. LEXIS 93269*. A magistrate judge's order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure *Bisig v. Time Warner Cable, Inc., 940 F.3d 205.* This standard is met if the magistrate judge has misinterpreted or misapplied the applicable law *Cogan Imps., Inc. v. Dharod, 2019 U.S. Dist. LEXIS 129520 .*

Both these standards present a high burden for the prosecution in prevailing on the merits of the appeal of the magistrate's decision on the motion to quash.

Particularly, since the agent's testimony has been limited to specific topics to prevent any "discovery expeditions." [Doc. 189, PageID#1314] For these reasons, the Government has not established a likelihood of success on its merits.

**F. The Government Has Not Shown Irreparable Injury.**

The party seeking relief must "demonstrate that irreparable injury is *likely* in the absence of [a stay]." *Winter v. NRDC, Inc*., 555 U.S. 7, 22 (2008) (finding that the mere showing of the possibility of irreparable harm is insufficient even when the party has shown a likelihood to succeed on the merits); *Nken v. Holder*, 556 U.S. 418, 434 (2009). The movant must demonstrate a probability of success that "is inversely proportional to the amount of irreparable injury" absent the stay. *Luxshare, Ltd. V. ZF Auto US, Inc.*, 555 F. Supp.3d 510, 515 (E.D. Mich. 2021). "In evaluating irreparable harm, [the Court] considers: the 'substantiality of the injury alleged'; whether the injury will likely occur; and whether the movant provided adequate proof of the

alleged injury." *Id*. (quoting *JSC MCC EuroChem v. Chauhan*, No. 18-5890, 2018 U.S. App. LEXIS 26226, 2018 WL 9650037, at *2 (6th Cir. Sept. 14, 2018)) (citation omitted). The possibility of harm is not enough to establish irreparable harm. *See Luxshare, Ltd. V. ZF Auto US, Inc.*, 555 F. Supp.3d 510, 515 (E.D. Mich. 2021) (finding the disclosure of conversations or documents that are not alleged to be privileged or confidential is not the type of injury that would cause irreparable harm); *see also JSC MCC EuroChem v. Chauhan*, No. 18-5890, 2018 U.S. App. LEXIS 26226, 2018 WL 9650037, at *4 (6th Cir. Sept. 14, 2018) (finding that the claim of irreparable injury by producing documents or testimony before the court that could be used as evidence in further actions is "speculative" and does not rise to the level of irreparable harm).

The Government has not identified a concrete injury that will result if the hearing proceeds. Defense counsel complied with the applicable *Touhy* procedures, and the subpoenaed agents appeared prepared to testify. In the hearing, the Government argued that the irreparable harm would be Government agents being forced to testify and that this could create possibility of impeachment material for the defense to use at trial. However, this claim is no more than pure speculation. The Government has not identified any particular question, document, subject, or anticipated answer that would cause irreparable harm.

The Government may argue that permitting testimony before completion of district-judge review would impair the value of that review. But the present circumstances show only that witnesses would testify at a scheduled judicial proceeding pursuant to subpoenas the Magistrate Judge declined to quash. A generalized objection to the timing of testimony does not identify a concrete injury arising from the testimony itself.

The standing dispute does not supply the missing injury. Testimony concerning the agents' entry, the site's access restrictions, the Defendants' respective locations and responsibilities, and

any interaction with Mr. Bonilla-Servin's vehicle will enable the Court to resolve standing on facts rather than assumptions. The possibility that testimony may undermine the Government's standing position is not an injury warranting a stay.

Any specific objection arising during testimony can be presented to the Court in context. The Government has not shown why the possibility of such an objection requires postponement of the entire hearing.

**G. A Stay Would Prejudice Defendants.**

The prejudice caused by delay is immediate and concrete. All subpoenaed witnesses appeared for the scheduled hearing and were prepared to testify. All defense counsel appeared and were prepared to proceed. Mr. Wells remains in custody and trial is scheduled for January 2027. The pending motion concerns the circumstances of the DHS agents' entry and the resulting evidence. Delaying the evidentiary hearing compresses the remaining pretrial schedule and prolongs uncertainty concerning a material pretrial issue.

The factual nature of the standing inquiry compounds that prejudice by delaying testimony that would permit the Court to actually engage in the factual determinations implicated by the Defendants' underlying motion to dismiss and the government's position on standing. Absent the now again delayed evidentiary hearing, the Court is left in the position of making only assumptions about what that testimony would have shown. Magistrate Judge McCook is perfectly capable of hearing the agents' testimony, applying it to the legal arguments advanced by the parties, and making a determination. No identifiable harm inures to the government by preventing her from doing so. At most, it means that the agents under subpoena might be required to twice take the witness stand at the motion hearing, and again at trial should the

government elect to call them, and testify truthfully. This is no harm to the United States, much less an irreparable one, and to the extent it could be construed otherwise, it is a harm for which the United States is responsible.

### H. The Public Interest Favors Prompt Resolution on a Developed Record.

The public interest favors efficient resolution of the pending motion on an adequate factual record. The subpoenaed witnesses and counsel appeared prepared to proceed, Mr. Wells remains detained, and trial is scheduled for January 2027.

Proceeding with the hearing will allow the Court to distinguish among outdoor areas, restricted workplace areas, vehicles, and personal effects. That individualized inquiry is consistent with the requirement that workplace privacy be evaluated according to the circumstances of the particular workplace. *O'Connor v. Ortega*, 480 U.S. 709, 717 (1987).

A stay would delay the testimony needed to decide standing and the underlying motion while requiring the parties and witnesses to prepare and appear again. The public interest in orderly and efficient case administration therefore weighs against postponement.

### I. The Balance of the *Nken* Factors Requires Denial of a Stay.

The Government has not made a strong showing of likely success. Its standing argument depends on unresolved facts concerning the site supervisor's authority, the site's operational use and access restrictions, the precise areas entered, the entrance employee's responsibilities, and any intrusion involving his privately owned vehicle.

The Government also has not identified irreparable injury from permitting subpoenaed agents to testify at a hearing for which they were already present. Defendants, by contrast, face concrete prejudice from delaying a fully prepared hearing, particularly because one Defendant

remains detained and trial is set for January 2027. The public interest favors prompt resolution on a developed factual record.

The standing dispute reinforces rather than diminishes the need for an evidentiary hearing. The Court should reject the Government's effort to convert unresolved factual questions into a basis for preventing the testimony needed to answer them.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court deny the United States' motion to stay and permit the evidentiary hearing on Defendants' pending motion to proceed promptly.

Respectfully submitted, this the 1st day of October, 2026


***s/ David Eldridge***
DAVID ELDRIDGE (BPR # 012408)
ELDRIDGE & CRAVENS, P.C.
The Cherokee Building
400 West Church Avenue, Suite 101
Knoxville, Tennessee 37902
(865) 544-2010

***s/ Loretta Cravens***
LORETTA CRAVENS (BPR # 023576)
ELDRIDGE & CRAVENS, P.C.
The Cherokee Building
400 West Church Avenue, Suite 101
Knoxville, Tennessee 37902
(865) 544-2010

***s/ Wade v. Davies***
WADE V. DAVIES [BPR #016052]
The Davies Law Firm, PLLC
900 S. Gay Street, Suite 802
Knoxville, TN 37902
(865) 686-6333
wdavies@wadedavies.law

***s/ Georgia A. Miller***
GEORGIA A. MILLER [BPR #041197]
The Davies Law Firm, PLLC
900 S. Gay Street, Suite 802
Knoxville, TN 37902
(865) 686-6333
gmiller@wadedavies.law
Counsel for Tyler Wells