IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:26-CR-14-KAC-JEM |
| | ) | |
| TYLER SHANE WELLS, | ) | |
| ALEXANDER BONILLA-SERVIN, | ) | |
| OMAR BONILLA-SERNA, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the Court for report and recommendation on the Motion to Dismiss Counts One, [Three,][1] Four, Five, Six, Seven, Eight, [and ]Nine . . . for Vagueness [Doc. 46], filed by Defendants Tyler Wells and Alexander Bonilla-Servin. 28 U.S.C. § 636(b). Defendant Omar Bonilla-Serna moves to adopt this motion [Doc. 159].

Defendants Wells, Bonilla-Servin, and Bonilla-Serna are charged with conspiring with Defendant Nicholas Foy Pastor and others known and unknown to "conceal, harbor, and shield from detection" in buildings and other places for the purpose of commercial advantage and private financial gain, six aliens, while "knowing and in reckless disregard of the fact that" the aliens had illegally entered and remained in the United States, all in violation of 8 U.S.C. § 1324(a)(1)(A)(iii), (a)(1)(A)(v)(I), and (a)(1)(B)(i) (Count One) [Doc. 73 p. 1]. Defendants Wells, Bonilla-Servin, and Bonilla-Serna are also charged with conspiring with each other and others known and

[1] The Superseding Indictment omitted former Count Two causing each of the counts thereafter to be renumbered [*See* Docs. 16 & 73]. At the motion hearing, the Court granted the parties' written [Doc. 176] and oral motions to consider their motions filed under the first Indictment in light of the renumbered counts in the Superseding Indictment [Doc. 181].

unknown to prevent federal officers from lawfully discharging their duties, to injure federal officers on account of and while engaged in their official duties, and to injure the property of federal officers to impede them in the discharge of their official duties, all in violation of 18 U.S.C. § 372 (Count Three) [*Id.* at 2–4]. The Superseding Indictment also alleges that Defendants Wells, Bonilla-Servin, and Bonilla-Serna, along with Defendant Pastore, aided and abetted each other in six counts of concealing, harboring, and shielding from detection six illegal aliens "in buildings and other places for the purpose of commercial advantage and private financial gain in violation of 8 U.S.C. § 1324(a)(1)(A)(iii)[ and] (a)(1)(B)(i)" (Counts Four–Nine) [*Id.* at 4–7].[2]

Defendants argue that 8 U.S.C. § 1324(a) is unconstitutionally vague as applied because law enforcement and courts have expansively interpreted the terms "conceal," "harbor," and "shield" to reach conduct beyond an ordinary person's understanding of the terms [Doc. 46 p. 3]. They assert the overly broad application of the statute invites arbitrary enforcement [*Id.*]. Defendants also ask to dismiss Count Three because the officers were not engaged in "the lawful discharge" of their duties as a matter of law [*Id.* at 4–5]. The Government counters that binding precedent holds § 1324(a) is not vague and Defendants' challenge to Count Three is a factual matter for the jury, not a legal interpretation of a statutory term [Doc. 62 pp. 3–8].

For the reasons set forth below, the undersigned respectfully recommends that the District Judge **GRANT** Defendant Bonilla-Serna's motion [Doc. 159] to join in the motion to dismiss and **DENY** Defendants' joint motion to dismiss alleging unconstitutional vagueness [Doc. 46].

---

[2] Defendant Bonilla-Servin is solely charged with charged with "forcibly assault[ing], resist[ing], oppos[ing], imped[ing], intimidat[ing], and interfere[ing]" with federal officers in the performance of their official duties by using his vehicle to strike the officers' vehicle in violation of 18 U.S.C. § 111(b) (Count Two) [Doc. 73 p. 2]. This count is not named in Defendants' motion to dismiss [Doc. 46].

## I. BACKGROUND AND POSITIONS OF THE PARTIES

As set out above, Defendants Wells, Bonilla-Servin, and Bonilla-Serna are charged with conspiring to harbor illegal aliens, forcibly preventing federal officers from discharging their official duties, and six counts of aiding and abetting each other in harboring six illegal aliens [Doc. 73]. The Government summarizes the factual basis for these charges as follows:

> On January 13, 2026, federal immigration officers arrived at a construction site to locate and apprehend individuals unlawfully present in the United States. Federal immigration officers had been investigating this construction site since approximately December 2025. Wells knew about the federal immigration enforcement activity surrounding his construction site, and Wells took affirmative steps to impede and interfere in that federal investigation to protect the illegal aliens he harbored from being apprehended. Wells used his cellphone to alert his onsite workers when immigration officers were nearby. Both [Defendants Wells and Bonilla-Servin] also took active steps to prevent the officers from reaching anyone on the site.

[Doc. 62 p. 1].

The Criminal Complaint against Defendant Bonilla-Servin provides additional information about his conduct [*See* Doc. 1]. It alleges that around 10:00 a.m. on January 13, 2026, two ICE agents were surveilling the construction site from their Jeep, which was parked in the parking lot of a daycare center across the street from the construction site [*Id.* ¶ 7]. It contends Defendant Bonilla-Servin drove his truck through the daycare center parking lot, first passing behind the Jeep and then in front of the Jeep [*Id.*]. While passing in front of the Jeep, Defendant Bonilla-Servin "looked directly at law enforcement seated in the Jeep" [*Id.*]. Defendant Bonilla-Servin then returned to the construction site, spoke with two or three people, and parked his truck "at a slight angle at the intersection of Sagittarius Lane and Hardin Valley Road[,] . . . facing Hardin Valley Road" [*Id.* ¶ 8]. The Criminal Complaint further alleges that "[a]s law enforcement began to converge on the" construction site, the Jeep left the daycare center parking lot and "traveled

toward" the construction site entrance [*Id.* ¶ 9]. As the Jeep "maneuver[ed] around the front of the truck to turn into the" site, "the truck lurched forward and came into contact with the right rear of the Jeep . . . caus[ing] the Jeep's right rear fender trim to come off" [*Id.*]. The officers ordered Defendant to put the truck in park and raise his hands [*Id.* ¶ 10]. When he did not comply, the officers extracted and detained him [*Id.*] "As law enforcement was taking [Defendant Bonilla-Servin] into custody, approximately 20 individuals rapidly departed the development and ran into the woods" [*Id.* ¶ 11].

Regarding Defendant Bonilla-Serna, District Judge Crytzer summarized the following information that was presented at his detention proceedings:

> In December 2025, Defendant was allegedly working as a subcontractor at a construction site for Codefendant Tyler Shane Wells [Doc. 144-1 at 1]. On December 20, 2025, while federal immigration officials were approaching the site, Defendant sent a text message to Wells: "Is any way you can check if ice is inside of the job? Or if is normal police" [Doc. 122 at 1-2]. Wells responded "Hold on" [*Id.* at 2]. Shortly thereafter, Wells messaged Defendant and others "Everybody get your guys off the job site. Send them all home. Ice is on the job." [*Id.*]. The next day, Defendant asked "is it possible to put a fence to cover the property" [*Id.*]. Wells said "Yes" he would talk with someone "about get[ting] one" [*Id.*]. Defendant said "Thanks boss" [*Id.*]. The work continued. On January 5, 2026, Wells messaged Defendant and others "Everybody get out of here ice is here" [*Id.* at 3]. That day, Wells imposed new rules: "Starting tomorrow, we are going to block the construction entrances for the job site so whoever wants to work can work and we're gonna leave cruise open and one of my subs is going to watch the entrance and he'll call me and let me know if ice pulls in so everybody can be prepared" [*Id.*]. Defendant's response: "Ok" [*Id.*].
>
> On January 13, 2026, Codefendant Alex Bonilla-Servin, Defendant's nephew, allegedly positioned a truck to block the construction site's entrance [*Id.*]. The truck hit a vehicle driven by federal immigration officials [*Id.*]. And allegedly illegal aliens who were working at the construction site fled and hid [*Id.*].

[Doc. 162 pp. 2–3].

On February 20, 2026, Defendants Wells and Bonilla-Servin filed a joint Motion to Dismiss certain of the charges "for being unconstitutionally vague and failing to provide constitutionally required notice" [Doc. 46 p. 1]. They contend that Counts One and Four through Nine charge violations of § 1324(a)(1)(A)(iii), which states it is an offense when one "conceals, harbors, or shields from detection an [illegal] alien in any place, including any building or means of transportation" [*Id.* at 2]. Defendants assert that the terms "conceal," "harbor," and "shield" are unconstitutionally vague because they are undefined and courts have interpreted these terms broadly [*Id.* at 2–3]. They maintain that "[t]he expansive interpretation that law enforcement and courts have taken of harboring expands far beyond what an ordinary person would understand the word to mean [and] invites arbitrary enforcement and an overly broad application of the statute for purposes that exceed the scope that the legislature intended" [*Id.* at 3]. They also argue that the statute does not clearly state whether the scienter requirement applies to the act of harboring or only to the alien's status as being illegally in the country [*Id.* at 3–4].

Defendants also contend that Count Three, which charges conspiracy to prevent federal officers from performing their official duties, is unconstitutionally vague as applied to them because "the officers identified in the indictment were not engaged in the lawful discharge of their duties" [*Id.* at 5]. They assert that, to their knowledge, the officers did not have a judicially issued warrant to enter the premises [*Id.*]. Defendants maintain the lawfulness of the officers' conduct is a question of law for the Court to decide [*Id.*].

The Government responds in opposition, arguing the terms "conceal," "harbor," and "shield" in § 1324(a)(1)(A)(iii) are sufficiently specific and defined by binding caselaw and whether the officers were engaged in the "lawful discharge" of their duties under § 372 is a question of fact for the jury [Doc. 62 pp. 3–4, 6–7]. As an initial matter, the Government contends

Defendants cannot bring a facial challenge to § 1324(a) but may only challenge the statute as applied to their conduct [*Id.* at 1–2]. Substantively regarding § 1324(a), it asserts that "'[c]onceal, harbor, and shield from detection' are concrete action verbs describing observable, real-world conduct" [*Id.* at 3]. Moreover, the Government maintains that in *United States v. Zheng*, 87 F.4th 336, 343 (6th Cir. 2023), the Sixth Circuit defined harboring as "encompass[ing] conduct that tends to substantially facilitate noncitizens remaining in the country illegally and prevent authorities from detecting the noncitizens' presence" [*Id.* at 4]. It also observes that the statute has a scienter element that further argues against vagueness [*Id.* at 6]. The Government contends Defendants' conduct—conducting counter surveillance, warning workers by telephone that federal officers were present, and creating an active blockade with a truck—"falls within the core of what § 1324(a) prohibits" [*Id.* at 5].

As to the § 372 argument, the Government asserts that Defendants "conflate[] vagueness with a factual defense on the merits" [*Id.* at 7]. It maintains the phrase "lawful discharge of duties" in the statute means the officers "were performing authorized official functions" and here, the officers "were conducting surveillance of the construction site and then attempted to enter the site to enforce federal immigration law" [*Id.*]. The Government maintains that whether the officers' attempted entry violated the Fourth Amendment "is a suppression question, not a vagueness question," and Defendants have filed a separate motion seeking in part to suppress evidence from the alleged entry [*Id.*]. It argues that, in essence, Defendants "dispute whether the officers were acting lawfully on January 13, 2026[,]" and that is a question of fact for the jury [*Id.* at 7–8].

In reply, Defendants "acknowledge[] that the Sixth Circuit has ruled on the specific intent issue related to the term harboring [in § 1324(a)(1)(A)(iii)] and raises this issue in order to preserve the specific intent requirement issue due to the circuit split" [Doc. 77 p. 1]. Regarding the phrase

"lawful discharge" in § 372, Defendants maintain the Court may determine pretrial the lawfulness of the officers' entry onto private property without a warrant or consent as a question of law [*Id.* at 1–2]. And "[i]f lawful discharge could be interpreted to mean entry without a warrant on private property, then the term would be rendered unconstitutionally vague" and Count Three should be dismissed [*Id.* at 2].

Defendant Bonilla-Serna, who entered the case after his codefendants filed the joint Motion to Dismiss, asks to adopt the motion and reply, because they "address issues that are germane to his case as well" and joinder furthers judicial economy [Doc. 159 p. 1 & n.1].

On September 9, 2026, the parties appeared before the undersigned for a hearing on Defendants' pending motions. All three Defendants were also present. Assistant United States Attorneys David P. Lewen, Jr., and Russ Swafford appeared on behalf of the Government. Attorneys Wade V. Davies and Georgia A. Miller represented Defendant Wells. Attorneys David M. Eldridge, Loretta G. Cravens, and Sharon Leveron represented Defendant Bonilla-Servin, and Attorney Robert R. Kurtz represented Defendant Bonilla-Serna, who participated with the aid of an interpreter.

At the hearing, counsel for Defendant Wells argued that § 1324(a) fails to provide constitutionally adequate notice of the meaning of concealing, harboring, or shielding from detection, particularly with regard to harboring. He maintained the ordinary meaning of "harbor" is to shelter or give refuge, but, here, Defendants cannot tell what conduct the Government contends is harboring—whether it is warning or merely employing undocumented individuals. Counsel also questioned whether the *Zheng* case cited by the Government decides the issue because *Zheng* does not address vagueness but, instead, focuses on jury instructions. He also

pointed out that the scienter requirement in § 1324(a) relates to a defendant's knowledge of the alleged alien's immigration status, not to the conduct that would constitute harboring.

Mr. Davies stated that the arguments for dismissal of Count Three (that the officers were not engaged in the lawful discharge of their duties) are related to arguments made in Defendants' Motion to Dismiss Indictment Based on the Unlawful Entry of Federal Officers [Doc. 47]. But he said Defendants maintain their position that if a lawful discharge of official duties can include the officers' entry at any time onto private property without a warrant or consent, then the phrase "lawful discharge" is also unconstitutionally vague.

All three Defendants clarified, through counsel, that they bring an "as applied" challenge, rather than a facial challenge, to the statutes. Mr. Eldridge and Mr. Kurtz adopted the arguments of Mr. Davies and had no additional argument to add.

The Government argued that in an as-applied vagueness challenge, the question before the Court is whether a person of ordinary intelligence in the Defendants' position would understand that his conduct is prohibited. AUSA Swafford maintained the Sixth Circuit defined harboring in the *Zheng* case and that decision is binding on this Court. He asserted the Defendants' conduct in this case—warning workers to leave because federal officers are nearby and putting a truck between the officers and workers—lies at the core, not the fringes, of the definition of harboring. He argued that a split among other circuits about the outer edge of the definition of harboring is not a reason to dismiss here. AUSA Swafford also argued that, in addition to containing the action verbs of concealing, harboring, and shielding, § 1324(a) contains a scienter requirement so that no one can inadvertently violate the statute. Thus, he maintained that Defendants' motion to dismiss alleging lack of notice should be denied.

After hearing the parties' arguments, the undersigned took the matter under advisement.

## II. ANALYSIS

"Due process requires a court to hold an ordinance or statute 'void for vagueness if its prohibitive terms are not clearly defined such that a person of ordinary intelligence can readily identify the applicable standard for inclusion and exclusion.'" *Brown v. City of Albion*, 136 F.4th 331, 344 (6th Cir. 2025) (quoting *United Food & Com. Workers Union v. SW Ohio Reg'l Transit Auth.*, 163 F.3d 341, 358–59 (6th Cir. 1998)). Vague statutes offend due process in two respects: they fail to give citizens fair notice of what conduct is prohibited and they fail to provide explicit standards to those charged with enforcing the laws. *Id.* (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972)). "To succeed on a vagueness claim, a [party] must show that the relevant statute (1) fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits or (2) authorizes or even encourages arbitrary and discriminatory enforcement." *Id.* (citation modified and citations omitted). In an as-applied challenge, the "defendant bears the burden of establishing that the statute is vague as applied to his particular case, not merely that the statute could be construed as vague in some hypothetical situation." *United States v. Kernell*, 667 F.3d 746, 750 (6th Cir. 2012) (quoting *United States v. Krumrei*, 258 F.3d 535, 537 (6th Cir. 2001)).

### A. Concealing, Harboring, and Shielding Under § 1324(a)

Defendants Wells, Bonilla-Servin, and Bonilla-Serna are charged with violating 8 U.S.C. § 1324(a)(1)(A)(iii), which prohibits a person from "knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation[.]" Defendants argue that

the statute does not define the terms "conceals, harbors, or shields from detection" and the dictionary definition for each term is broad and invites arbitrary enforcement.

It is true that the statute does not define these terms. But in *United States v. Zheng*, the Court of Appeals for the Sixth Circuit addressed the meaning of "harboring" under § 1324, which binds this Court. In doing so it cautioned against using the dictionary definition of harboring as the source of statutory meaning. 87 F.4th 336, 342 (6th Cir. 2023) (examining whether the trial court properly instructed the jury on "harboring" in § 1324(a)(1)(A)(iii)). The Court of Appeals observed that when common words have several meanings or those meanings are broad, courts must take care not to rely on "such broad definitions" to criminalize conduct "that may not constitute 'harboring' under § 1324." *Id.* at 342–43. It adopted the definition used by the Third, Fifth, and Eighth Circuits: "'harboring' encompasses conduct that tends to substantially facilitate noncitizens remaining in the country illegally and prevent authorities from detecting the noncitizens' presence." *Id.* at 343 (citing *United States v. Ozcelik*, 527 F.3d 88, 100 (3d Cir. 2008); *United States v. Tipton*, 518 F.3d 591, 595 (8th Cir. 2008); *United States v. Shum*, 496 F.3d 390, 392 (5th Cir. 2007)).

Defendants also argue that "harboring" is vague because, under § 1324(a)(1)(A)(iii)'s plain language, it is not clear whether the scienter requirement of "knowing or in reckless disregard" applies to "harboring" or only to the legality of the alien's entry or presence in this country [Doc. 46 p. 3 (noting a circuit split)]. But again, *Zheng* addresses the issue. 87 F.4th at 343–45. Applying the "reenactment cannon of statutory interpretation,"[3] *id.* at 342, the Court of Appeals observed that "the prior version of the subject statute required the government to prove that a

[3] The reenactment cannon "provides that whenever Congress amends a statutory provision, a significant change in language is presumed to entail a change in meaning." *Zheng*, 87 F.4th at 342 (quoting *In re Davis*, 960 F.3d 346, 354 (6th Cir. 2020) (citation modified)).

defendant 'willfully or knowingly' harbored an illegal noncitizen from detection," *id*. at 345 (citing 8 U.S.C. § 1324(a)(3) (1953)). When it amended § 1324 in 1986, Congress removed the mens rea requirement from "harboring" and attached a lesser mens rea of "knowing or in reckless disregard" to the provision that the alien entered or remained in the United States illegally. *Id*. at 342, 345 (citing § 1324(a)(1)(A)(iii)).

Defendants' alleged conduct here of warning workers of the officers' presence would come within the definition of harboring (or concealing or shielding from detection),[4] as would taking actions to prevent officers from locating and arresting illegal aliens.[5] Defendants, therefore, have not shown that § 1324(a)(1)(A)(iii) is vague as applied to them.

**B. Lawful Discharge of Official Duties Under § 372**

In pertinent part Count Three charges Defendants with conspiring "to injure officers of the United States in their persons and property on account of, and while such officers were engaged in, the lawful discharge of the duties of their offices" [Doc. 73 p. 2]. Defendants argue that the phrase "lawful discharge of the duties of their offices" is unconstitutionally vague because it encompasses the officers' entry onto private property without a judicial warrant or consent. But the Government contends that Defendants' argument "conflates vagueness with a factual defense

---

4 Although Defendants' argument focuses on "harboring," they also allege "conceal" and "shield" are vague [Doc. 46 pp. 3–4]. But they do not develop their argument apart from asserting the terms are not defined in the statute and relying on the dictionary definitions. They therefore do not show their conduct would not come within § 372.

5 At the September 9 hearing, Mr. Davies argued that § 1324 is vague because harboring could include merely employing undocumented workers. But this argument is not well taken. Employing workers not lawfully in the country is covered by a different part of the statute. *See* 8 U.S.C. § 1324(a)(3)(A) (criminalizing the knowing employment of "at least 10 individuals with actual knowledge that the individuals are aliens described in subparagraph (B)"). And a defendant raising an as applied challenge must show that his own alleged conduct does not come within the statutory provision. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010) (holding a person who engages in proscribed conduct cannot assert a vagueness challenge as to the conduct of others (citation omitted)).

on the merits" [Doc. 62 p. 7]. Indeed, Defendants do not allege that the meaning of "lawful discharge of the duties of their offices" is unclear. Instead, their challenge turns upon a factual question: whether the officers were acting lawfully at the time they encountered Defendant Bonilla-Servin's truck on January 13, 2026. In other words, they assert the Government cannot prove one of the provisions of § 372, which Defendants acknowledge is an "essential element[]" of the offense [Doc. 46 p. 5].

Essential factual elements, however, are for the jury to determine at trial. *United States v. Driscoll*, No. 1:05-CR-103, 2006 WL 335520, at *1 (E.D. Tenn. Feb. 13, 2006) (explaining that, "[g]enerally, a defense can be determined before trial if it involves questions of law instead of questions of fact on the merits of criminal liability" and providing as examples of questions of law "matters [such] as 'former jeopardy, former conviction, former acquittal, statute of limitations, immunity [and] lack of jurisdiction'" (last alteration in original) (citing *United States v. Craft*, 105 F.3d 1123, 1126 (6th Cir. 1997))); *see also* Fed. R. Crim. P. 12(b)(1) ("A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."). In any event, Defendants do not otherwise show, or argue, that § 372 fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct the statute prohibits or authorize or encourage arbitrary and discriminatory enforcement. *Brown*, 136 F.4th at 344 (explaining requirements to succeed on a vagueness claim).[6] They therefore fail to meet their burden.

---

[6] In support of their assertion that § 372 is vague, Defendants also rely on the arguments raised in connection with the Motion to Dismiss Indictment Based on the Unlawful Entry of Federal Officers [Doc. 46 p. 5]. But those arguments do not address the clarity of the terms of § 372 and do not provide a basis to dismiss on vagueness grounds.

## III. CONCLUSION

For the reasons explained herein, the undersigned respectfully **RECOMMENDS** that the District Judge **GRANT** Defendant Bonilla-Serna's request to adopt [**Doc. 159**] the motion to dismiss and **DENY** Defendants' joint Motion to Dismiss Counts One, [Three, and] Four[ through] Nine[] [**Doc. 46**].[7]

Respectfully submitted,

Jill E. McCook
United States Magistrate Judge

---

[7] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Judge need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Tchrs.*, 829 F.2d 1370, 1373 (6th Cir. 1987).